UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                              Crim. No. 16-CR-01424-MV

MARC DUTCH,

    Defendant.

## MEMORANDUM OPINION AND SENTENCING ORDER

On September 26, 2019, this Court held a resentencing hearing as to Defendant Marc Dutch. Doc. 69. At issue was whether the government has carried its burden on remand of establishing by a preponderance of the evidence that Mr. Dutch qualifies for a mandatory 15-year term of imprisonment under the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e). After carefully considering the Tenth Circuit's order and judgment in *United States v. Dutch*, 753 Fed. Appx. 632 (10th Cir. 2018) (unpublished), hearing new argument from the parties, and once again reviewing the *Shepard* documents submitted in this case, the Court concludes that the government still has not carried its burden of establishing by a preponderance of the evidence that Mr. Dutch has three prior violent felony convictions "committed on occasions different from one another." § 924(e)(1). The Court accordingly finds that the ACCA does not apply.

Having again considered the need to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court hereby resentences Mr. Dutch to a term of 60 months' imprisonment in the Bureau of Prisons as to Count 1 of the indictment, charging him with Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). It additionally re-imposes a term of three years of supervised release and the special conditions set forth below.

# BACKGROUND

## I. The Instant Offense

The events giving rise to this case occurred on January 27, 2016. Doc. 27 at 4. On that date, officers with the Albuquerque Police Department responded to the area of 4000 Camino De La Sierra in reference to a vehicle that had crashed into a wall. *Id*. A search of the Motor Vehicle Database revealed the vehicle to be registered to the defendant, Mr. Dutch. *Id*. Responding officers soon made contact with Mr. Dutch, who had reportedly fled the scene and was standing on a nearby sidewalk with his hands in his jacket pockets. *Id*. Officers commanded Mr. Dutch to remove his hands from his pockets, but he initially refused and began to walk away. *Id*. at 4–5. After receiving additional commands, Mr. Dutch eventually complied and was taken into custody. *Id*. at 5. Officers then patted him down and recovered a loaded .22LR caliber revolver from his front right jacket pocket. *Id*. They also recovered a five-dollar bill containing a crystalline substance which field-tested positive for methamphetamine, and a loaded syringe with a clear substance that was also determined to be methamphetamine. *Id*. Mr. Dutch appeared intoxicated. *Id*.

On April 12, 2016, Mr. Dutch was charged in a one-count indictment with Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g) and 924(e). Doc. 2. The indictment charged him with knowingly possessing the .22 caliber revolver and two rounds of ammunition on January 27, 2016, while having been convicted of three prior felonies: auto burglary, embezzlement of a motor vehicle, and bank robbery. *Id*. He pled guilty to the indictment on November 7, 2016. Doc. 26.

## II. The ACCA Enhancement and The Supporting Documents

In its initial Presentence Report filed on December 9, 2016, probation found that Mr. Dutch "has at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions." Doc. 27 ¶ 31. It concluded that he is therefore "an armed career criminal… subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)." *Id*. The predicate offenses probation relied on in applying the ACCA enhancement were Mr. Dutch's 2006 federal convictions for Bank Robbery in case number 05-CR-02769-002JC. *Id*. Finding these convictions to satisfy the ACCA's requirements, probation applied a five-level enhancement to Mr. Dutch's Base Offense Level. *Id*. It also noted that, under § 924(e), the Court was required to impose a term of imprisonment of at least 15 years. Doc. 27 ¶ 103.

In his original Sentencing Memorandum, Mr. Dutch raised several objections to probation's finding that the ACCA applied. Doc. 33 at 3–5. He argued that the definition of "different occasions" in § 924(e) is unconstitutionally vague in violation of the Fifth Amendment; that the government could not carry its burden of showing that Mr. Dutch's convictions for bank robberies occurred on different occasions; and that applying the ACCA's mandatory minimum sentence would result in cruel and unusual punishment in violation of the Eighth Amendment. *Id*.

In response, the government argued that the ACCA should apply, and that Mr. Dutch's bank robbery convictions were committed on three separate occasions. Doc. 34 at 1, 10–11. In support, it submitted three documents from the 2006 bank robbery case: the ten-count indictment, dated December 28, 2005 [Doc. 34-1]; Mr. Dutch's plea agreement, dated July 19, 2006 [Doc. 34-2]; and the criminal judgment, dated November 15, 2006 [Doc. 34-3]. The government did not submit a transcript of Mr. Dutch's plea colloquy from the plea hearing in the case.

As the Court will discuss in depth below, the documents the government submitted from the 2006 case are exceedingly sparse and ambiguous and therefore fail to explain what exactly Mr. Dutch admitted to in connection with the convictions. The plea agreement does not contain a recitation of the factual basis for the plea or a statement of the offense elements Mr. admitted to committing. It simply states "[t]he defendant hereby agrees… to plead guilty to Counts 1, 6, and 7 of a seven-count indictment charging violation [sic] of 18 U.S.C. § 2113, that being Bank Robbery, and 18 U.S.C. § 2, that being Aiding and Abetting." Doc. 34-2 at 2.

As for the indictment, the three counts to which Mr. Dutch agreed to plead guilty appear to correspond to three separate bank robberies that occurred on different dates and at different banks in Albuquerque in 2005. Doc. 34-1 at 1, 3–4. Count 1 corresponds to a robbery that occurred on November 12, 2005 at the First Financial Credit Union located at 2700 San Mateo Boulevard NE; Count 6 corresponds to a robbery that occurred on November 25, 2005 at the Ironstone Bank located at 7300 Jefferson NE; and Count 7 corresponds to a robbery that occurred on November 26, 2005 at the Sandia Laboratory Federal Credit Union located at 3707 Juan Tabo Boulevard NE. *Id*.

However, each of these counts charge two other individuals in addition to Mr. Dutch: George Marvis Hyatt and Natalie Angelique Gutierrez. *Id*. Each of the counts also charge both substantive bank robbery in violation of 18 U.S.C § 2113(a) and aiding and abetting in violation of 18 U.S.C. § 2. *Id*.

The final document the government submitted in relation to the 2006 case is the criminal judgment, filed on November 11, 2006. Doc. 34-3. The first page of the judgment confirms that Mr. Dutch pled guilty to Counts 1, 6, and 7 of the indictment. *Id*. at 1. It then records that he was

adjudicated guilty of Bank Robbery on each of these counts and notes that each offense ended on a different date.[1]  *Id.*

### III. The First Sentencing

The Court considered Mr. Dutch's objection to the application of the ACCA at his first sentencing hearing held on October 12, 2017.  Doc. 41.  After reciting the relevant caselaw, the Court concluded that "the government ha[d] failed to meet its burden under *Shepard* of providing the reliable evidence that the prior offense occurred on occasions different from one another."  Doc. 42 at 14:7–10 (Transcript of Oct. 12, 2017 Sentencing).  Although the Court briefly noted the lack of detail in the *Shepard* documents submitted by the government, in granting Mr. Dutch's objection the Court primarily relied on its finding that the robberies were part of one "ongoing drug-fueled criminal offense."  Tr. at 13:22–14:6, 14:10–11.  It pointed out that in *United States v. Delossantos*, 680 F.3d 1217, 1220 (10th Cir. 2012), the Tenth Circuit held that a defendant's prior convictions were committed on "occasions different from one another" for the purposes of the ACCA because he had a "meaningful opportunity to cease his illegal conduct."  Tr. at 14:21–15:3.  Noting Mr. Dutch's long history of drug addiction and his heavy drug use during the robberies, the Court found that he did not have a "meaningful opportunity" to cease his criminal conduct and accordingly ruled that the ACCA enhancement did not apply.  Tr. at 15:4–19, 16:12–15.

---

[1] As to Count 7, the judgment records the offense end date as "11/26/2006."  *See* Doc. 34-3 at 1.  This appears to be an error, because the indictment charges that the third bank robbery occurred on November 26, 2005, not 2006.  *See* Doc. 34-1 at 4.  However, on such a limited record, the Court cannot be confident about which of these two documents is correct, and which is wrong.  This discrepancy highlights the difficulty of determining when a prior offense was committed for the purposes of the ACCA without the benefit of the defendant's factual admissions in a plea colloquy or his assent to the factual basis for the plea in a plea agreement.

5

The Court then weighed the § 3553(a) factors to determine an appropriate sentence relative to the guideline range.[2]  Tr. at 18:2–14.  As to Mr. Dutch's history and characteristics, the Court noted that he had a tumultuous and troubled childhood.  Tr. at 18:15–16.  Mr. Dutch's father was an alcoholic who physically abused his mother and once made Mr. Dutch drink several beers at a young age as punishment, causing him to get sick and vomit.  Tr. at 18:17–21.  In 1994, Mr. Dutch's parents divorced, and his mother moved from Albuquerque to Illinois.  Tr. at 18:22–24.  She then fell into alcoholism, and his father began to use crack cocaine.  Tr. at 18:25–19:1.  In 2010, Mr. Dutch's father committed suicide.  Tr. at 19:11–12.  Mr. Dutch has an older brother, three stepsiblings, and a half-sister, but no longer has a close relationship with his siblings.  Tr. at 19:12–16.  He is unmarried and has no children.  Tr. at 19:11.

The Court additionally noted Mr. Dutch's struggles with mental illness and long history of substance abuse.  He reported attempting suicide at least twice in the past and suffering from posttraumatic stress disorder as a result of being involved in a prison riot while a federal inmate in Terre Haute, Indiana.  Tr. at 19:17–21.  As to substance abuse, Mr. Dutch began drinking alcohol at the age of 8, using marijuana at the age of 9 or 10, using crack cocaine when he was about 15, and using methamphetamine when he was 17, which he used up until his arrest for the present offense.  Tr. at 19:22–20:1.  Mr. Dutch was clean from illegal substances from January 2015 to January 2016, but then relapsed.  Tr. at 20:1–2.  He also has a history of gambling addiction, which contributed to his relapse and his use of methamphetamine leading up to the instant offense.  Tr. at 20:3–5.

---

[2] The Court originally calculated Mr. Dutch's guideline range without the ACCA as 70 to 87 months based on an offense level of 21 and a criminal history category of V.  Tr. at 18:2–14.  The Court later amended that calculation, however, based on a clarification from defense counsel, resulting in an offense level of 25.  Tr. at 25:25–26:8.  That change did not affect the Court's decision to vary downwards or the ultimate sentence it imposed.

With respect to the need for the sentence imposed to reflect the seriousness of the offense, the Court noted that Mr. Dutch's conduct put the public and law enforcement officers at risk of injury or death, but that he accepted responsibility for his actions. Tr. at 20:6–11.

With respect to deterrence, the Court noted that although Mr. Dutch has an extensive criminal history, most of it appears to have been related to his serious drug addiction and aggravating struggles with mental illness. Tr. at 20:25–21:2. The Court further noted its belief that a combination of an appropriate period of imprisonment, combined with proper drug and mental health treatment, should help Mr. Dutch avoid recidivating. Tr. at 20:12–15.

Finally, with respect to rehabilitation, the Court noted that Mr. Dutch is desperately in need of substance abuse treatment–both during his imprisonment and after his release–and mental health treatment to address his extremely difficult childhood. Tr. at 20:19–24.

Considering all of the factors set forth in § 3553(a), especially Mr. Dutch's "very difficult and painful childhood, his drug addiction and his mental illness," the Court concluded that a downward variance was appropriate in this case. Tr. at 21:3–6. It accordingly sentenced Mr. Dutch to a term of 60 months' imprisonment in the Bureau of Prisons followed by three years of supervised release. Tr. at 21:10–20.

### IV. The Tenth Circuit's Order and Judgment Reversing and Remanding on Appeal

On appeal, the government argued that the Court erred in ruling that the ACCA did not apply. *Dutch*, 753 Fed. Appx. at 633. In an unpublished order and judgment, the Tenth Circuit agreed. *Id.* In the order, the Tenth Circuit focused on addressing this Court's primary reasoning in the first sentencing hearing, which was that Mr. Dutch's convictions did not occur on "occasions different from one another" because "his drug use rendered him unable to halt his criminal activities." *Id.* at 634. It clarified that the relevant inquiry is whether the predicate offenses took place at different times and locations, and it found that Mr. Dutch's prior indictment "demonstrates

7

that his three bank robberies occurred at different times and places, and involved different banks." *Id*. The order further noted that Mr. Dutch "necessarily admitted that he possessed the requisite mens rea as to each independent robbery by pleading guilty to three separate counts" and that his voluntary intoxication does not mean he was denied a meaningful opportunity to cease his conduct. *Id*.

In a paragraph towards the end of the order, the Tenth Circuit additionally stated that it "reject[s] Dutch's argument that he did not admit to aiding and abetting the bank robberies on different occasions." *Id*. It reasoned that "regardless of the facts underlying Dutch's aiding and abetting, the government offered proof that Dutch pled guilty to three counts of substantive bank robbery in violation of 18 U.S.C. § 2113(a)." *Id*. at 634–35.

The Tenth Circuit accordingly reversed this Court's finding that the ACCA does not apply and remanded with instructions to vacate Mr. Dutch's sentence and resentence him consistent with the order and judgment. *Id*. at 635.

### V. The Resentencing Hearing

On September 26, 2019, this Court held Mr. Dutch's resentencing hearing. Doc. 69. The Court acknowledged that the Tenth Circuit's order rejected the issue it had focused on at the first sentencing: namely, that Mr. Dutch did not have a meaningful opportunity to cease his criminal conduct due to his drug use and addiction. Doc. 71 at 23:15–17 (Transcript of Sept. 26, 2019 Resentencing Hearing). The Court therefore deemed that issue no longer pertinent, and instead heard argument on another issue that was not fully-developed or addressed at the first sentencing: whether the *Shepard* documents submitted by the government, and Mr. Dutch's plea agreement in particular, are adequate to satisfy the government's burden under the ACCA of establishing that Mr. Dutch has three prior felony convictions committed "on occasions different from one another." Tr. at 23:17–23.

While fully understanding and respecting its obligation to follow binding orders from the Court of Appeals, the Court finds that the Tenth's Circuit's remand order did not explicitly address the ambiguities of the *Shepard* documents in this case, and in particular the unclear language of Mr. Dutch's July 2006 plea agreement, in analyzing whether the government has carried its burden under the ACCA. *See Dutch*, 753 Fed. Appx. at 632. That discreet issue was the focus of Mr. Dutch's resentencing hearing, and it will be the focus of the Court's analysis in this Memorandum Order and Opinion.

**STANDARD**

Under the ACCA, a person who violates 18 U.S.C. § 922(g) faces an enhanced punishment of no less than 15 years' imprisonment if they have three previous convictions for a violent felony "committed on occasions different from one another." § 924(e). The government bears the burden of proving by a preponderance of the evidence that the prior offenses occurred on three different occasions. *United States v. Delossantos*, 680 F.3d 1217, 1219 (10th Cir. 2012). In this Circuit, offenses occur on "occasions different from one another" for the purposes of the ACCA if they take place at different times or locations. *See, e.g., United States v. Harris*, 447 F.3d 1330, 1305 n.2 (10th Cir. 2006) ("Separateness under the ACCA turns on when and where the crimes were committed."). Bank robbery in violation of 18 U.S.C. § 2113(a) is a "violent felony" under the ACCA. *See Dutch*, 753 Fed. Appx. at 635 (citing *United States v. McCranie*, 889 F.3d 677, 677–78 (10th Cir. 2018)).

In *Shepard v. United States*, the Supreme Court held that the Sixth Amendment's right to a trial by jury limits the documents a court can review in determining whether a defendant's guilty plea to a prior offense qualifies them for an enhanced sentence under the ACCA. 544 U.S. 13, 26 (2005). At issue was whether a sentencing court could look to underlying police reports or

9

complaint applications to determine whether the defendant's plea "necessarily admitted to" an ACCA-qualifying generic burglary offense. *Id*. at 16. The Court answered in the negative, holding that under the Sixth Amendment principles announced in *Jones v. United States* and *Apprendi v. New Jersey*, a sentencing court trying to determine whether a defendant pled guilty to an ACCA-qualifying offense may only look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id*. at 25–26 (citing *Jones*, 526 U.S. 227 (1999) and *Apprendi*, 530 U.S. 466 (2000)).

Although *Shepard* only dealt with the part of the ACCA inquiry that looks to whether a prior conviction was a "violent felony" within the meaning of the Act, multiple Circuits have since found that its reasoning also governs the inquiry into whether a defendant's prior convictions were committed on different occasions. *See United States v. King*, 853 F.3d 267, 269 (6th Cir. 2017) (holding that a sentencing court may only use *Shepard*-approved sources to determine whether a defendant's prior offenses were committed "on occasions different from one another"); *United States v. Dantzler*, 771 F.3d 137, 139 (2nd Cir. 2014) (same).

## DISCUSSION

The Court finds that the government still has not met its burden of proving by a preponderance of the evidence that Mr. Dutch has three prior convictions for violent felonies "committed on occasions different from one another." § 924(e)(1); *Delossantos*, 680 F.3d at 1219. The only *Shepard* documents the government has submitted as to Mr. Dutch's prior violent felony convictions are the 2006 indictment, Mr. Dutch's plea agreement, and the criminal judgment in the case. Because these records are facially ambiguous and lack factual detail, they do not establish

what Mr. Dutch pled guilty to, nor whether he "necessarily admitted" to committing his offenses on three separate occasions. *Shepard*, 544 U.S. at 24; *King*, 853 F.3d at 269.

First, all Mr. Dutch's July 2006 plea agreement says is that he agreed to plead guilty to "Counts 1, 6, and 7 of a seven-count indictment charging violation [sic] of 18 U.S.C. § 2113, that being Bank Robbery, and 18 U.S.C. § 2, that being Aiding and Abetting." Doc. 34-2 at 2. In other words, under the plea agreement, Mr. Dutch agreed to plead guilty to three *counts*, each of which charged both substantive bank robbery and aiding and abetting. The agreement does not specify which of the *offenses* within these counts Mr. Dutch agreed to plead to. *See* Doc. 34-2. Accordingly, it does not establish whether Mr. Dutch was agreeing to plead guilty to the substantive bank robbery charge in each count, the aiding and abetting charge in each count, or both. And because the plea agreement does not contain a factual basis for the plea or a statement of the elements Mr. Dutch was admitting to, this ambiguity remains unresolved.

Cross-referencing the plea agreement with the indictment does not provide any additional clarity and actually makes the question of what Mr. Dutch "necessarily admitted to" harder to answer. As the Court noted above, the relevant counts in the indictment charge two other defendants in addition to Mr. Dutch: George Marvis Hyatt and Natalie Angelique Gutierrez. Doc. 34-1 at 1, 3–4. And each of the counts charge both substantive bank robbery and aiding and abetting. *Id*. Nothing in the indictment explains whether all three of the charged defendants committed substantive bank robbery *and* aiding and abetting, whether two of the defendants were the substantive robbers and one was the abettor, or whether one was the robber and two the abettors. *Id*. Nor does it explain who was who, if there were in fact different roles. *Id*. Given the inclusion of the separate aiding and abetting charge in each count, it stands to reason that at least one of the defendants was an accomplice and not a principal. And while the government argued

at resentencing that the same person can be both a substantive bank robber and an accomplice, [Tr. at 19:18–19], the Court does not find that to be the most likely scenario, especially when applied to all three defendants.

Nor does the criminal judgment adequately resolve these questions, as explained in more detail below. Although the judgment records the fact that Mr. Dutch was ultimately convicted of three substantive bank robberies, [Doc. 34-3 at 1], he would have received these convictions even if his role was only that of an aider and abettor. *See, e.g., United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir. 1996) ("It is well established that aiding and abetting is not an independent crime under 18 U.S.C. § 2; it simply abolishes the common-law distinction between principal and accessory.").

Accordingly, all the present record establishes is a set of possibilities as to Mr. Dutch's prior convictions. One possibility is that Mr. Dutch admitted to committing three substantive bank robberies which, per the indictment, appear to have occurred at three separate times and places. Doc. 34-1 at 1, 3–4. That scenario would qualify him for the ACCA enhancement. *See* § 924(e). Another possibility, however, is that Mr. Dutch admitted only to the portion of Counts 1, 6, and 7 that charge aiding and abetting. Doc. 34-1 at 1, 3–4. Because the plea agreement only says that Mr. Dutch agreed to plead guilty to *Counts* 1, 6, and 7, without specifying which *charges*, this remains an equally-likely possibility. Doc. 34-2 at 2. And to the extent that the Court is required to construe the ambiguities in the plea agreement in a particular direction, the law suggests that they should be construed against the government, not Mr. Dutch. *United States v. Hahn*, 359 F.3d 1315, 1343 (10th Cir. 2004) (noting that as a contract, a plea agreement should be construed against its drafter, the government).

The problem with the possibility that Mr. Dutch only admitted to aiding and abetting the robberies is that it throws into question whether the act or acts underlying his prior convictions occurred "at occasions different from one another." § 924(e). In the Tenth Circuit, to have aided and abetted a crime, a defendant need only have "intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about." Tenth Circuit Criminal Pattern Jury Instructions § 2.06, at 79 (2018). In other words, "the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him." *Id*. Importantly, to be found guilty of a crime through aiding and abetting, a defendant need not perform the underlying criminal act or be present when it is performed. *Id*. Moreover, participation that is "of relatively slight moment" is enough to sustain a conviction through aiding and abetting. *See United States v. Burks*, 678 F.3d 1190, 1195 (10th Cir. 2012) (citation omitted).

As defense counsel has argued, if Mr. Dutch admitted only to aiding and abetting the robberies rather than committing them as a principal, his three convictions in connection with the robberies may have stemmed from a single helpful act. For example, after hearing about the planned robberies, Mr. Dutch may have agreed to provide his co-defendants the weapons they needed to carry them out. Or he may have given his co-defendants access to storage space in his control to hide the getaway vehicle used in each of the robberies or the money stolen from each of the banks. In either of these scenarios, so long as the government could show that Mr. Dutch knew about the upcoming robberies and intended that his one-time act would "help" in their commission, he would have been just as liable for the robberies as the principals who actually carried them out on the three separate occasions. Tenth Circuit Criminal Pattern Jury Instructions § 2.06, at 79.

And critically, because in these scenarios Mr. Dutch would have been fully liable for the substantive offenses he aided and abetted, the indictment charging him and the criminal judgment adjudicating his guilt may not reflect his true role. To the contrary, these documents might present a misleading picture of his prior convictions.

The recent Tenth Circuit case of *United States v. Burks*, 678 F.3d at 1190, is highly instructive. The defendant in that case, Cedric Burks, was charged in a two-count second superseding indictment. Count 1 of that indictment reads in relevant part:

> Cedric Duane Burks, the Defendant herein, did transport in interstate commerce a motor vehicle, to wit, a 2004 Cadillac Escalade, VIN 3GYFK66N14G257612, knowing the same to be stolen, and did aid and abet therein, all in violation of 18 U.S.C. § 2312 and 18 U.S.C. § 2.

Count 2 reads in relevant part:

> Cedric Duane Burks, the Defendant herein, did receive, possess, conceal, and store a motor vehicle, to wit, a 2004 Cadillac Escalade, VIN 3GYFK66N14G257612, knowing the same to be stolen, and which vehicle had crossed a State boundary after being stolen, and did aid and abet therein, all in violation of 18 U.S.C. § 2313 and 18 U.S.C. § 2.

Second Superseding Indictment at 2–3, *United States v. Burks*, No. 2:07-CR-173-004 TS, (D. Utah Jan. 20, 2010), ECF No. 409.

The language of the indictment strongly suggests that Burks committed the substantive offenses of transporting a stolen vehicle in interstate commerce (Count 1) and possessing the same stolen vehicle (Count 2). *See id.* However, a cautious reader, noticing the aiding and abetting charges and language, may conclude that Burks' role is so far unclear.

Then there is the criminal judgment. The judgment states that as to Counts 1 and 2 of the indictment, Burks was adjudicated guilty of two offenses: Interstate Transportation of Stolen Motor Vehicle in violation of 18 U.S.C. § 2312 and Possession/Receipt of Stolen Motor Vehicle in in violation of 18 U.S.C. § 2313. Criminal Judgment at 1, *United States v. Burks*, No. 2:07-CR-

173-004 TS, (D. Utah Oct. 6, 2010), ECF No. 585. It does not say that Burks was found guilty of aiding and abetting these offenses; it does not mention the aiding and abetting charges at all. *Id*. As such, the most logical reading of the judgment, in conjunction with the indictment, is that it clarifies that Burks did in fact commit the substantive offenses of transporting and possessing the stolen vehicles.

But that would be wrong. Despite the misleading language of the indictment and the absence of any references to aiding and abetting in the judgment, Burks "was not convicted as a principal… but as an accomplice under the federal accomplice liability statute." *Burks*, 678 F.3d at 1193. In reality, he does not appear to have ever been near the stolen Cadillac; he simply called a dealership, pretended to be a buyer, obtained the key code for the car, and passed it on to his co-defendants, the principals, who then used the information to make a key, physically steal the vehicle, and transport it across state lines. *Id*.

What *Burks* so clearly illustrates is that in a case that charges both substantive offenses and aiding and abetting, it may be impossible to tell from an indictment and a subsequent criminal judgment whether a defendant was convicted as an accomplice or as a principal. And as explained above, that distinction makes all the difference in determining whether the defendant "necessarily admitted to" committing the prior felonies on more than one occasion. *Shepard*, 544 U.S. at 25–26.

The Court will not guess what Mr. Dutch's actual role in the 2005 robberies was, and what he actually admitted in connection with those crimes, in determining whether the ACCA and its 15-year mandatory minimum sentence should apply in this case. The record before the Court simply does not resolve these questions, and *Shepard* prohibits it from looking any further. *Id*. Because the government has not established that Mr. Dutch "necessarily admitted" to committing

15

the robberies on three different occasions, it has not met its burden of establishing by a preponderance of the evidence that he has three prior convictions for violent felonies "committed on occasions different from one another." § 924(e). The ACCA enhancement will not apply.

## TERM OF IMPRISONMENT AND CONDITIONS

Having found that the ACCA does not apply, Mr. Dutch's offense level is 25 and his criminal history category is V. The guideline imprisonment range is therefore 100 to 125 months. For all the reasons stated on the record at Mr. Dutch's first sentencing hearing and reproduced above, *see* supra at 5–7, the Court finds that the factors set forth in 18 U.S.C. § 3553(a) warrant a downward variance in this case.

As to Count 1 of Indictment 16-CR-1424, Mr. Dutch is hereby committed to the custody of the Bureau of Prisons for a term of 60 months.

The Court recommends that Mr. Dutch participate in the Bureau of Prisons' 500-hour Residential Drug Abuse Program.

The Court orders that this sentence run concurrently with Mr. Dutch's state sentence in case number D-202-CR-2013-01126 and designates a state facility as the primary custodian for the sentence in this case. After Mr. Dutch completes his state sentence, the Court recommends he complete the remainder of any federal sentence at the Federal Correctional Institution Greenville in Greenville, Illinois.

The Court additionally orders that Mr. Dutch be placed on supervised release for a term of three years as to Count 1 in the Indictment.

Mr. Dutch must comply with the mandatory and standard conditions of supervised release. He must also comply with the following special conditions:

You must not use or possess alcohol.

You must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic cannabinoids, synthetic cathinones, etc.) that impair your physical or mental functioning, whether or not intended for human consumption.

You must not possess, sell, offer for sale, transport, cause to be transported, cause to affect interstate commerce, import, or export any drug paraphernalia, as defined in 21 U.S.C. § 863(d).

You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program. You may be required to pay all, or a portion, of the costs of the program.

You must take all mental health medications that are prescribed by your treating physician. You may be required to pay all, or a portion, of the costs of the program.

You must reside in a residential reentry center for a term of (up to) 6 months. You must follow the rules and regulations of the center.

You must participate in an inpatient substance abuse treatment program. Following completion of the inpatient program, you must participate in an outpatient substance abuse treatment program. You must follow the rules and regulations of both programs, and the probation officer will supervise your participation in both of these programs (provider, location, modality, duration, intensity, etc.). You may be required to pay all, or a portion, of the costs of these programs.

You must participate in either Alcoholics Anonymous or Narcotics Anonymous.

You must submit to substance abuse testing to determine if you have used a prohibited substance. Testing may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, an alcohol monitoring technology program, and/or any form of prohibited

substance screening or testing. You must not attempt to obstruct or tamper with the testing methods. You may be required to pay all, or a portion, of the costs of the testing.

You must participate in an educational or vocational services program and follow the rules and regulations of that program. The probation officer will approve the program (agency, location, frequency of participation, etc.) and supervise your level of participation. You may be required to pay all, or a portion, of the costs of the program.

You must submit to a search of your person, property, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office under your control. The probation officer may conduct a search under this condition only when reasonable suspicion exists, in a reasonable manner and at a reasonable time, for the purpose of detecting firearms, deadly weapons, controlled substances, and any other illegal contraband. You must inform any residents or occupants that the premises may be subject to a search.

You must not engage in any form of gambling (including, but not limited to, lotteries, on-line wagering, sports betting) and you must not enter any casino or other establishment where gambling is the primary purpose (including, but not limited to, horse race tracks, off-track betting establishments). You must participate in a gambling addiction treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You may be required to pay all, or a portion, of the costs of the program.

Based on Mr. Dutch's lack of financial resources, the Court will not impose a fine. The Court considered alternative sanctions, such as community service, in lieu of all or a portion of the

fine, and concludes the total combined sanction without a fine or alternative is sufficiently punitive.

Mr. Dutch is ordered to pay a special assessment of $100, which is due immediately and payable to the United States District Court Clerk's Office.

Pursuant to 18 U.S.C. § 3742(a), Mr. Dutch has the right to appeal the final sentence of this Court. He has the right to apply for leave to appeal *in forma pauperis* if unable to pay the cost of an appeal.

## CONCLUSION

For the reasons stated above, Mr. Dutch is **HEREBY SENTENCED** in accordance with this order.

DATED this 21st day of October, 2019.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Brian A. Pori | George C. Kraehe |
| *Attorney for Mr. Dutch* | *Assistant United States Attorney* |