## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                    No. 16-CR-1424 MV

MARC DUTCH,

        Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on the Defendant's Opposed Motion for Release from the Residential Re-Entry Center [Doc. 90]. Having carefully considered the briefs, relevant law, and being otherwise fully informed, the Court finds that the defendant's Motion is well-taken and will be **GRANTED**.

### BACKGROUND

Mr. Dutch is awaiting resentencing in accordance with the Tenth Circuit's mandate in *United States v. Dutch* (*Dutch II*), 978 F.3d 1341, 1347 (10th Cir. 2020). In *Dutch II*, the Tenth Circuit held that the Armed Career Criminal Act "governs Dutch's sentencing." *Id.* at 1346. However, the Tenth Circuit also noted that this Court could reconsider the issue on remand when faced with "exceptional circumstances" such as "a dramatic change in controlling legal authority." *Id.* at 1345–46.

Following the Tenth Circuit's decision, defense counsel filed an "Unopposed Motion to Vacate and Continue the Sentencing Hearing." Doc. 85. He explained that there was likely to be a "dramatic change in controlling legal authority" in the near future, because the Supreme Court's decision in *Wooden v. United States*—expected in early 2022—"could have a direct effect on the

central issues presented in [Mr. Dutch's] case." Doc. 85 at ¶¶ 9–10. Crediting this argument, the Court continued Mr. Dutch's sentencing. Doc. 86.

Several months later, the government notified this Court that Mr. Dutch's Bureau of Prisons term was set to expire in early December of 2021. Doc. 87 at 2. The government requested a sentencing hearing before December, but this Court denied the government's motion in accordance with its "broad discretion in scheduling sentencing hearings." Doc. 89 at 13 (quoting *United States v. Wells*, 504 F. App'x 724, 726 (10th Cir. 2012)). In its Memorandum Opinion and Order, this Court stated that it would "set the case for re-sentencing after *Wooden* is decided, likely in January or February of 2022." *Id.*

> In the meantime, Mr. Dutch will remain under the strict supervision of the United States Probation Office. He will not, as the United States fears, be completely at liberty in the community; rather, he will be required to continue residing in a residential reentry center for up to six months after the expiration of his time in custody.

*Id.* (citing Doc. 73 at 5).

Mr. Dutch has now requested that, while awaiting resentencing, he be allowed to "leave Diersen's Charities Residential Re-Entry Center and move into his own apartment in the Uptown area of Albuquerque." Doc. 90 at 1. He has been living at Diersen Charities since June 16, 2021, and his three-year period of supervised release began on December 9, 2021. *Id.* at 2.

Mr. Dutch has done exceptionally well during his time at Diersen Charities. When he was first released from custody, he "worked between 50 and 80 hours a week with Speedway Convenience Stores in Albuquerque." *Id.* at 2.

> He subsequently obtained employment as an apprentice electrician with the International Brotherhood of Electrical Workers Union. Currently Mr. Dutch is employed between five and six days a week working at the Facebook construction project in Los Lunas, New Mexico . . . . If he is not working as an apprentice electrician on the weekends, Mr. Dutch works Saturdays and Sundays as a clerk at a Speedway Convenience Store from 6:00 a.m. to 6:00 p.m.

*Id.* at 2–3.  He has "paid his subsistence fees to the Re-entry Center, made regular payments on his outstanding restitution, bought a reliable vehicle and paid to have the vehicle licensed and insured and still saved enough money to rent his own apartment."  *Id.* at 4.  He admits to "a few minor rule violations in the Residential Re-entry Center," but has "not been accused of a single act of violence or any inappropriate behavior . . . . has remained drug free . . . . has worked 80-90 hours a week . . . . [and] has not missed a single counseling appointment." *Id.* at 2; Doc. 92 at 3.  He asks to leave Diersen so that he can take advantage of additional work and counseling opportunities.  Doc. 90 at 3–4; Doc. 92 at 1.

Although the United States Probation Office (USPO) has assured this Court that Mr. Dutch is ready to leave Diersen, the United States Attorney's Office opposes his request.  Doc. 91 at 1.  The government argues that "[g]iven Dutch's history of substance abuse, his criminal history, and his 'rule violations,' the United States believes that Dutch would benefit from a longer period of more intense supervision that he is receiving at the halfway house.  This heightened level of supervision would also afford additional protection to the public."  Doc. 91 at 2.

## DISCUSSION

Mr. Dutch has earned the opportunity to move out of Diersen and into an apartment.  In the nine months he has been outside of the Bureau of Prisons, he has shown that he can work with his Probation Officer, remain sober, work a demanding job, and consistently attend counseling.  He has proven to be an asset the community rather than a danger.

Mr. Dutch's legal status remains unchanged: he is awaiting a resentencing that will take place after the *Wooden* decision.  Thus, he is still serving the sentence imposed on September 26, 2019.  *See United States v. Haymond*, 139 S. Ct. 2369, 2379–80 (2019) (supervised release is part of a defendant's "final sentence").  Nor has the supervised release condition involving the

3

residential reentry center (RRC) changed in any way: Mr. Dutch was required to reside at an RRC for *up to* six months after the expiration of his time in custody.  Doc. 73 at 5.  The Court has never imposed a requirement that he stay at an RRC for six months exactly.

This Court has previously cited the condition that Mr. Dutch reside in an RRC as one component of the USPO's "strict supervision" and one reason why Mr. Dutch would not be "completely at liberty in the community" after leaving the Bureau of Prisons.  Doc. 73 at 5.  Thus, it is worth noting that Mr. Dutch will remain under the strict supervision of the USPO even after he leaves Diersen.  He will not be completely at liberty in the community; rather, he must continue to comply with the standard and special conditions of supervision.  In addition, the court will impose location monitoring with active GPS, as well as a curfew which will be set by his Probation Officer consistent with his work schedule.  This condition will allow Mr. Dutch to take advantage of additional work and counseling opportunities while ensuring that he remains closely monitored.

Federal Rule of Criminal Procedure 32.1 governs the modification of the conditions of supervised release.  That Rule provides that "[b]efore modifying the conditions of . . . supervised release, the court must hold a hearing," but "[a] hearing is not required if: (A) the person waives the hearing; or (B) the relief sought is favorable to the person and does not extend the term of probation or of supervised release; and (C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so."  Fed. R. Crim. P. 32.1.  In this case, it is Mr. Dutch who has suggested location monitoring.  Doc. 92 at 3–4.  The government has not addressed his suggestion.  Thus, the Court concludes that the imposition of location monitoring is favorable to Mr. Dutch and the government has been afforded a reasonable opportunity to object, but has not.

4

These conditions are extremely demanding.  In addition to location monitoring, Mr. Dutch must participate in substance abuse counseling, substance abuse testing, and mental health counseling; further, he must comply with USPO visits and searches.  Doc. 73 at 3–6.  The Court is confident that these conditions will allow Mr. Dutch to continue his positive trajectory and will be sufficient to protect the public as he awaits resentencing.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Defendant's Opposed Motion for Release from the Residential Re-Entry Center is **GRANTED.**  Mr. Dutch's conditions are supervised release are modified to include the following language:

> You must participate in and successfully complete location monitoring with active GPS as part of a location monitoring program.

> You must comply with a nightly curfew.  This curfew will be set by your Probation Officer, taking into account your work schedule.

ENTERED this 25th day of February 2022.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE